IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

_____

Trial Case No. 2:11-CR-20752
Habeas Case No. _____

_____

**DARREN TERRY**

Defendant-Movant,

v.

UNITED STATES OF AMERICA,

Plaintiff-Respondent.



_____

**MOTION TO VACATE JUDGMENTS OF CONVICTION AND SENTENCE,
AND TERRY'S MEMORANDUM OF LAW, AUTHORITIES, AND POINTS
IN SUPPORT OF RELIEF**
Under Title 28 U.S.C. §2255

_____

Appearance:

<u>Pro Se</u>
Darren Terry
FBoP Reg. #15441-039
FCI Gilmer
P.O. Box 6000
Glenville, WV 26351

I. **STANDARD OF REVIEW**

This Court must vacate and set aside a sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the rights of the prisoner as to render the judgment vulnerable to collateral attack, ..." 28 U.S.C. §2255.

When the defendant files a §2255 motion, he must set forth facts which entitle him to relief. Green v. Wingo, 454 F.2d 52, 53 (6th Cir. 1972); O'Malley v. United States, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not subsnatantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." O'Malley, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. Loum v. Underwood, 262 F.2d 866, 867 (6th Cir. 1959); United States v. Johnson, 940 F.Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. §2255 because of constitu-tional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citations omitted) (§2254 case); Clemmons v. Sowders, 34 F.3d 352, 354 (6th Cir. 1994); see also United States v. Cappas, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying Brecht to a §2255 motion.) If the sentencing

i

court lacked jurisdiction, then the conviction is void and must be set aside. Williams v. United States, 582 F.2d 1039, 1041 (6th Cir.), cert denied, 439 U.S. 988, 99 S.Ct 584, 58 L.Ed.2d 661 (1978). To warrant relief for a constitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. Reed v Farley, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994); Grant v. United States, 72 F.3d 503, 506 (6th Cir.), cert. denied, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996).

Further, a §2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); Grant v. United States, 72 F.3d at 506; United States v. Walsh, 733 F.2d 31, 35 (6th Cir. 1984). Thus, a §2255 motion may not be used to litigate the issues that should have been presented and decided on direct appeal unless (1) cause is shown for the tardy challenge and (2) actual prejudice resulting from the error is demonstrated. United States v. Frady, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Alternatively, a defaulted claim may be raised if a defendant shows that he is actually innocent of the crime. See Bousley, 523 U.S. at 622.

Terry avers that his §2255 claims meet the standard of review.

ii

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

Trial Case No. 2:11-CR-20752
Habeas Case No. _____

DARREN TERRY,

      Defendant-Movant,

        v.

UNITED STATES OF AMERICA,

      Plaintiff-Respondent.

Sean F. Cox, U.S. District
Judge, Presiding

**TERRY'S MEMORANDUM OF LAW,
AUTHORITIES, AND POINTS
IN SUPPORT OF RELIEF UNDER
28 U.S.C. §2255**

The defendant-movant Darren Terry, ("Terry"), submits this Memorandum of Law, Authorities, and Points in Support of Relief under 28 U.S.C. §2255, and so avers the following:

### GROUND I

TERRY WAS DEPRIVED HIS SIXTH AMENDMENT RIGHT
TO THE EFFECTIVE ASSISTANCE OF COUNSEL, WHERE
DEFENSE ATTORNEY ANTHONY CHAMBERS (AS WELL AS
BY SURROGATE STEPHON JOHNSON) OMITTED DUE
REVIEW AND INVESTIGATION OF THE CASE AND OF
TERRY'S PERSONAL HISTORY AND CHARACTERISTICS
IN ORDER TO REALIZE CLEAR ERRORS MADE BY THE
U.S. PROBATION OFFICER THAT GENERATED TERRY'S
PRE-SENTENCE INVESTIGATION AND RESULTING PRE-
SENTENCE INVESTIGATION REPORT

Terry was represented at the pre-trial stages of proceedings by Anthony T. Chambers ("Chambers") and subsequently by Stephon E. Johnson ("Johnson"), the latter standing in for Chambers whom was required to limit his active capacity due to his facing "disciplinary action before the Michigan Bar Association for his conduct in an unrelated matter(s)." See United States v. Gordon, et al., 2013 U.S. Dist. Lexis 23662 (USDC ED MI SD 02/21/2013).

At Terry's pre-trial proceedings "Defendant Ervin Vincent stated that he discussed the issue of conflict in this action and his right to separate counsel with his attorney, Stephon Johnson. Defendant Ervin Vincent stated that does not waive his right to separate counsel. Defendant Ervin Vincent thereafter requested the Court appoint him new counsel.

Under oath, Defendant Darren Terry stated that he discussed the potential conflict in this action and his right to separate counsel with his attorney, Anthony Chambers. Defendant Darren Terry stated that he wished to waive any conflict and his right to separate counsel.

Furthermore, Anthony Chambers asked Defendant Darren Terry whether he was aware that Mr. Chambers may face disciplinary action before the Michigan Bar Association for his conduct in an unrelated matter(s). Mr. Chambers further inquired whether Defendant Darren Terry knew that a formal order may soon be issued in that action and whether he and Defendant Darren Terry previously discussed the implications of that action, as well as the potential effect it may have on his ability to represent Defendant Darren Terry.

[...] Anthony Chambers apprised the Court that he is currently representing Darren Terry in a related action before District Court Judge Battani in United States v. Cook, Case No.2:10-cr-20667, (filed on March 21, 2011), dealing with some of the same evidence that the Government will offer in this action." United States v. Gordon, 2013 U.S. Dist Lexis 23662

2

## A. Chambers Forewent Conducting Any Due Federal Rules of Criminal Procedure Under Rule 32 Which Would Have Evoked Adversarial Testing Of Wrongfully Imposed Enhancements Of "Maintained Premise For Distributing Drugs", "Manager/Supervisor in Activity With Five-Plus Participants", As Well As For Erroneous Uses of "Other Prior Sentences" Point Scoring

The Federal Rules of Criminal Procedure states that a federal district court must allow the parties to comment on a probation officer's determinations and other matters relating to an appropriate sentence, and that the court may permit the parties to introduce evidence on the objections. Fed. R. Crim. P. 32(i)(1)(C), (i)(2). The U.S. Sentencing Guidelines provide that when any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. U.S. Sentencing Guidelines Manual §6A1.3. This does not give any party the right to introduce live testimony, but the parties must be given an adequate opportunity to present relevant information to the court. After the parties presentation of information, the sentencing court must -for any disputed portion of the presentence report or other controverted matter- rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing. Fed. R. Crim P. 32(i) (3)(B). Moreover, it would be an abuse of discretion for a federal district court to decide a disputed question of fact against a party without giving that party an opportunity to present relevant and admissible evidence. An evidentiary hearing may sometimes be the only relaible way to resolve disputed issues. USSG §6A1.3, cmt.

3

To the extent that the prior convictions that Terry avers
have wrongly included in his criminal-history score calculation
are reviewed for their putative propriety of use even absent a
correction of excluding them in light of their actual dispositions
there would still remain error of count because of the dates
that the priors were incurred by him. The issue (which Chambers
should have been responsible in his duty as counsel to assess
adequately for Terry's sake) is the treatment here of prior
convictions that were obtained on the same day.

Under U.S.S.G. §4B1.2, prior sentences don't qualify as
predicates for career-offender sentences unless they are "counted
separately" under the provisions that govern the calculation of
criminal-history score, U.S.S.G. §4A1.1(a), (b) and (c). These
subsections require the addition of 0, 1, 2 or 3 criminal-history
points, depending on the length of the prior sentence.

§4A1.2 states in part that "for purposes of applying §4A1.1
(a), (b), and (c)" w3hen multiple prior sentences are treated
as punishment for a single offense - as they sometimes are when
they were imposed on the same day - "use the longest sentence
of imprisonment if concurrent sentences were imposed."

Circuit law upon proper procedure for counting prior convict-
ions under such circumstances have left circuits divided. For
instance, the 8th Circuit held that the guidelines are ambiguous
about what to do when only one of two prior sentences imposed on
the same day would qualify as a predicate "crime of violence"
or "drug trafficking offense" and the sentences are of equal

4

length. Applying the rule of lenity, the court in United States v. King, 595 F.3d 844 (8th Cir.2010) held such sentences should not be counted. Another panel of the 8th Circuit recently held that construance of guidelines to be wrongly decided, see Donnell v. United States, No.12-3465, 2014 BL 235936 (8th Cir. 08/26/2014), infra, however, this Circuit also weighs into the divisive issue. The 6th Circuit said it is clear that the U.S. Sentencing Commiss- ion intended judges to treat such sentences as career offender predicates. See United States v. Williams, 753 F.3d 626 (6th Cir. 2014) (calling the 8th Circuit's analysis "nonsensical" and said it leads to the "ridiculous result" of allowing a defendant to "evade career offender status because he committed more crimes than the qualifying offense.". The issue is likely to compel en banc in the 8th Circuit. Meanwhile district courts in that juris- diction are bound by the holding in King, supra.

Terry avers that where this issue presents a circuit-split concerning the appropriate scoring of multiple crimes within a single predicate episode, under §4B1.2, until there arises a consensus by the Court of Appeals, or a U.S. Supreme Court rule to end dispute, the matter requires case-by-case analysis for perceivable due process; a procedure also forwent by the district court here because of Chambers/Johnson's ineffectiveness.

Certainly the scoring here can be seen to have been conducted inconsistently even with the Sixth Circuit rule stricture, in view of the Guidelines. As §4B1.2(c) makes clear, in order to count as one of the two "prior felony convictions" under U.S. Sentencing

Guidelines Manual §4B1.1(a), the sentences for the prior convict-
ions must be counted separately under the provisions of §4A1.1
(a), (b), or (c) - that is, they must add points to the defend-
ant's criminal history under one of those provisions. §4B1.2(a)
(2) in turn provides that, when a defendant is sentenced to
concurrent sentences of imprisonment and the sentences count
as a single sentence either because they (1) resulted from
offenses contained in the same charging instrument or (2) were
imposed on the same day, only the longest sentence counts
separately under the provisions of §4A1.1(a), (b), or (c). See
Williams, supra.

Notably, the Sixth Circuit recognizes that §4B1.2's require-
ment that the sentences for at least two of the prior felony
convictions be counted separately under the provisions of §4A1.1
(a), (b), or (c) gaurds against a specific type of sentencing
bootstrapping, where a single criminal episode resulting in a
single sentence could satisfy the enhancements requirement of
two predicate crimes. The guideline solves this problem by
requiring the two predicate crimes to count separately. Read
in context, §4B1.2 says nothing regarding the scoring of multiple
crimes within a single predicate episode. See Williams, supra.

Here, although Terry was previously convicted on November
20, 2007 of possession of drugs by plea in which the Court did
accept to the dismiss remaining OUIL charge, both drug possession
and OUIL were scored to add points as separate predicate crimes
to the affectuate Terry's offense level and history category.

6

Another instance of Chambers' IAC was his failure to inquire and investigate as to the government's set of facts that it had averred were indicative of Terry's being a "manager or supervisor" with regard to the drug conspiracy accusation.

A defendant receives a three-point increase in criminal offense level if he was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive. U.S. Sentencing Guidelines Manual §3B1.1(b). According to the Guidelines comment-ary, to qualify for a adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. §3B1.1(b), cmt., application n.2. This means that the enhancment applies only when the defend-ant had decisionmaking authority or control over a subordinate. The question of whether a defendant was a manager or a supervisor is a mixed question of law and fact. See United States v. Pena-Hermosillo, 522 F.3d 1108; (10th Cir.2008) (Because the context of the crime is so important to the ultimate conclusion, the district court must conduct a thorough review of all subsidiary facts that might be relevant to the ultimate manager-supervisor determination). Here, Chambers would have easily realized that no sufficient manager-supervisor factual allegations included within the government's theory for a §3B1.1(b) enhancement.

Even by theory it was only alleged and Terry only entered a plea of guilty through allocution relaying that he engaged in opportuned transactions; no managerialized operations.

7

Pena-Hermosillo, infra. (a federal district court is required,
for any disputed portion of a presentence report or other contro-
verted matter, to rule on the dispute. Though a ruling on a
disputed issue need not be exhaustively detailed, it must be
definite and clear. At the very least, the district court must
find and articulate sufficient facts and reasons to allow an
appellate court to review the appropriateness of an enhancement;
without such findings, the appellate court would have to engage
in conjecture to divine the basis for the district court's ruling.
Failure to provide proper explanation for the chosen sentence
is reversible procedural error.).

Where Chambers forewent conducting any due Federal Rules
of Criminal Procedure ("Fed. R. Crim. P.") under Rule 32 which
would have evoked adversarial testing of wrongfully imposed
enhancments of "maintained premises for distributing drugs",
"manager/supervisor in activity with five-plus participants",
as, well as for uses of "other prior sentences" point scoring,
there were no due objections to these sentencing factors, much
less evidence introduced to support objection. The Court was
not guided towards a ruling on the disputes inherent of these
matters. An evidentiary hearing was not conducted which would
have prompted answers to the questions of what "premise" was
Terry supposed to have maintained for distributing drugs? and
how so was this such a premises? and maintained by him?

Nor was evidentiary hearing conducted to prompt answer
to the questions of what "activity" was Terry supposedly a

8

a manager or supervisor in? And who are these five-plus particip-ants of whom he putatively managed or supervised?

Nor was an evidentiary hearing conducted to prompt answer to whether the "other prior sentences" used to score points under §4A1.1(c) sufficient to count for the points they added?

Chambers could not conduct the proper inquiries, investigate nor obtain and review relevant records to present these matters as the reasonable disputes that they are where he was apparently preoccupied with his own disciplinary proceedings which ended with his having been disbarred for other unrelated misconduct, and had only directed surrogate counsel Johnson to advise Terry to be assured of receiving no more than a 120 month sentence and as such simply to prepare to sign the proposed plea agreement. Neither of the lawyers ever bothered to address the facts of the case with Terry, real or supposed. See United States v. Sustaita, 1 F.3d 950 (9th Cir.1993) (appeal court reversed a defendant's sentence and remanded for resentencing because the record did not show whether the sentencing judge determined if she had read the presentence report or discussed it with her counsel as required by Fed. R. Crim. P. 32(a)(1)(A) and such failure was not harmless error).

The use of hearsay evidence at sentencing violates due process only if the sentencing judge relied upon information which is materially false or unreliable. Fed. R. Crim. P. 32(c)(3)(D) safegaurds a defendant from this hazard, by providing that if the defendant challenges the information contained in

9

the presentence investigation report, the judge must make findings
of fact concerning any disputed matter upon which it proposes to
rely in sentencing. Sustaita, supra.

Terry was never received of, much less enabled to review,
and much much less with the assistance of counsel, the presentence
investigation report ("PSIR"), at any time during any court
proceedings, and was never aware of its content until he was
incarcerated with the Federal Bureau of Prisons at FCI Gilmer
in West Virginia. To the extent that surrogate counsel Johnson
advanced any indication to the Court that Chambers, much less
himself aided Terry in the review of the the PSIR, such position
is insufficient to find that Terry actually ever saw the PSIR.
Compare that "[t]he fact that Sustaita's counsel used the word
"we" twice is an insufficient basis to find that Sustaita read
the presentence report. In that same sentence, her counsel also
used the word "me" and, in any event, this argument infuses
greater meaning than we can extract from a common stylistic
device used by lawyers." Id at 953. The record here is devoid
of Terry's being able to intelligently rejoin any reference to
any of the putative facts contained in the PSIR.

"In the present case, by contrast, [Terry]'s counsel made
no specific objection to any fact in the [PSIR]. If [Terry] had
been given an opportunity to read or discuss the [PSIR], [he]
could have tried to contradict the report's factual finding".
Id at 954. Terry has been entirely deprived of right to effective
assistance of counsel to aid him as the Federal Rules direct.

10

B. **Chambers' (And By His Surrogate Counsel Johnson) Ineffective Assistance of Counsel Presented By These Claims Have Caused Terry To Be Convicted and Sentenced In Violation Of His Sixth Amendment Right to Counsel**

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right extends beyond the mere presence of counsel to include "reasonably effective assistance" of counsel. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance, Terry must demonstrate two essential elements: (1) that counsel's performance was deficient, that is, below the standard of competence expected of attorneys in criminal cases; and (2) that counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial, rendering the outcome of the trial unreliable. Id. at 687-88. In a guilty plea context the defendant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. See, e.g., Campbell v. United States, 686 F.3d 353 (6th Cir. 2012) (counsel's failure to conduct procedure to preserve appeal subjected to case remand for an evidentiary hearing in order to determine whether the defendant provided the direction). Indeed, "Courts do not cut corners when Sixth Amendment rights are at stake" See Campbell, at 359.

Here, the record reflects that not only was Terry deprived of Chambers conducting investigations that he and his family asked the lawyer to do, but these issues were forewent on appeal.

11

If Chambers/Johnson would have evoked due sentencing
procedures Terry's sentencing would not have been prejudiced by
such deficient performance. Moreover, were Terry to know that he
was not going to receive the 120 months which Chambers incessantly
assured him he would by entering the plea agreement the lawyer(s)
procured, he would not even have pleaded guilty and would have
chosen to go to trial rather than have the wrongful sentencing
enhancements of maintaining a premises for distribution of drugs
and managing or supervising in a drug operation erroneously imposed
upon him. These accusations are unreal, and have no evidentiary
basis. Yet Chambers, clearly not looking into anything about the
case, allowed the district court to rely on misinformation conveyed
by the probation officer in the PSR. The erroneous PSR may be fixed
because it is "part of the record" and hence may be corrected "at
any time" under Fed. R. Crim. P. 36. See <u>United States v. Mackay</u>,
No. 13-10521 (5th Cir. 2014)

<u>Motion To Correct the Record</u>
<u>Pursuant to Fed. R. of Crim. P. 36</u>

Wherefore the aspect of these §2255 proceedings which does
concern that these numeous averred misinformations have served
the district court's relying upon erroneous information in
sentencing Terry, and fact found that but for counsel's errors
in omitting objections to these facts the sentencing court would
have not adopted the wrong conclusions, Terry aacordingly moves
the Court for Order of the U.S. Probation Department to correct
the record accordingly. Specifically, the misinformations of
having maintained a premises for drug distribution and having
been a supervisor or manager of drug distributors to rescind.

The Plea Agreement of April 2, 2013 (Doc. #379), at page 7 of 15 (Pg ID 1914) an emphasized clause was included to state:

> "BY SIGNING BELOW, DEFENDANT ACKNOWLEDGES THAT HE HAS READ (OR BEEN READ) THIS ENTIRE DOCUM-ENT, UNDERSTANDS IT, AND AGREES TO ITS TERMS. HE ALSO ACKNOWLEDGES THAT HE IS SATISFIED WITH HIS ATTORNEY'S ADVICE AND REPRESENTATION. DEFENDANT AGREES THAT HE HAS HAD A FULL AND COMPLETE OPPORTUNITY TO CONFER WITH HIS LAWYER, AND HAS HAD ALL OF HIS QUESTIONS ANSWERED BY HIS LAWYER."

This clause of the plea agreement apparently includes as an insulation of defense attorney, here; the surrogated for, of counsel but nominally, promising yet unfulfilling, and ultimately subject of disbarment proceedings, Anthony Chambers, and in part by Stephon Johnson. Terry avers that the Court can realize that the composition of this clause, under the specific circumstances of this case, arises as duly assessable as unethical at least, and actually surreptitious by more accuracy.

At any rate, jurists can be found to agree that such pre-requisite to entering plea agreement is indeed at least unethical for federal prosecutors to insist that defendants surrender any potential claims of IAC as a condition of accepting one. See United States v. KY Bar Ass'n, KY, No.2013-SC-000270-KB, 08/21/2014. (The court finding that imposition of obligation to refrain from raising discovered IAC claims creates a scenario by which prosecutors are "influencing or persuading" defense attorneys to perform "unethically).

Of course, here, any influence or persuading that Assistant U.S. Attorney Stephon P. Cares may possibly have had upon Anthony

13

Chambers to perform unethically could only have served an exacerbation of Chambers' malfeasances, being that after the attorney provided Terry and his family with misinformations and misadvice, see Sworn Affidavit of Darren Terry; Sworn Affidavit of Carletta Huffman, (Deposing facts of consultations with Anthony Chambers). all enclosed herewith, marked Terry's §2255 Exhibits "A", "B" Chambers then became elusive while facing disciplinary charges in a separate proceedings, yet directed surrogate counsel Johnson to continue to relay his repeated promisories despite inconsistent case developments which he did not allow for altering the blather.

Chambers also misadvised Terry that another court case made pending by the government against him before the Court under case docket #10CR20667 would be imposed against him if he failed to enter into the plea agreement in this case. See Sworn Affidavit of Darren Terry in Support of §2255 Motion, enclosed herewith.

The June 24, 2008 OUIL conviction for which movant received 30 days term of imprisonment as part of sentence carries a 90-days statutory maximum penalty; the November 20, 2007 OUIL and Possession of drugs convictions for which movant received 1 year term of probation as part of sentence carries a 90-days statutory maximum penalty; the June 2, 2003 Attempt to deliver narcotic less than 50 grams conviction for which movant received 1 year term of probation as part of sentence carries a 90-day statutory maximum penalty, as all are Michigan State Misdemeanors. The December 22, 1997 Possession of narcotics less than 25 grams conviction had initially been charged as a Michigan felony but was ultimately

14

Another instance yet, aside these others, and presents as a cumulative occurrence of nonfeasance by Chambers/Johnson, is the failure to recognize or point the district Court to the sentencing disparity of co-defendants in this case. Compare, Trent Obamwonyi, Terry's co-defendant, whom possessed the same Criminal History Points as Terry, received a sentence of 121 months as the 6th enumbered co-defendant on the indictment. Terry meanwhile received a sentence of 225 months as the 5th enumbered co-defendant on the indictment. Both being advisory guideline sentences were amenable to consideration of their equity to each other. Of course, a counsel who was not active enough in a case to realize that his client was being unreasonably ascribed as a maintainer of a drug premises and a supervisor or manager of drug distribution was not likely to elsewise pay attention to how disparate a sentence that client was receiving compared to a similarly ituated defendant (as Terry avers that Obamwonyi is inasmuch as he is a case co-defendant). See Holtsclaw v. United States, 2014 U.S. Dist. Lexis 39084 (USDC ED Tenn. 2014) (citing United States v. Nelson, 918 F.2d 1268, 1275 (6th Cir. 1990) ("A great disparity between a defendant's advisory guideline sentence and his co-conspirators' sentences may cause the district court to consider a downward departure to conform the defendant's sentence to that of his coconspirators; the departure must be reasonable under the facts of the case). Equally of course, the district court was as disabled from including the sentencing factor of sentencing disparity as it was of all the other demonstrated factors neglected by Chambers/Johnson.

15

**C. Terry Received the Ineffective Assistance of Counsel By Paul L. Nelson Who Inexplicably Overlooks the Clear Errors By Chambers/Johnson's Nominal Representation Of Him Which Was Devoid Of Any Inquiry Of the Enhancements Information In the PSR Nor Investigation of the Case Facts Which Could Have Shown That Terry Did Not Maintain a Premises for Drug Distribution, Nor Managed Or Supervised Others For That Purpose, Issues That Were Sufficiently On the Record For Direct Appellate Review, And Which Nelson Was Made Cognizant Of By Terry's Communication**

In view of the very apparent absence of Chambers largely throughout Terry's proceedings, notwithstanding the surrogate role of Johnson which was also seen to serve only as a conduit for the recurrent Chambers talking point of "don't worry Mr. Terry, just sign the plea agreement and I promise that you will not receive more than 120 months", while all actual sentencing exposure went unassessed, uninvestigated, and defense counter-contentions for enhancement recommendations undeveloped, it was incumbent of appellate counsel to alert the U.S. Court of Appeals for the Sixth Circuit of these circumstances of the case. See Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 462 (6th Cir. 2003); see also Thaddeus-X v. Blatter, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (en banc). Terry communicated to appellate counsel, including by writing, see Letters to Appellate Counsel, in Appendice herewith, marked as Terry's §2255 Motion Exhibits "C-1" and "C-2".

Nelson refused to raise any of these claims on direct appeal and then refused to raise any claims for a petition for hearing or rehearing, with suggestion for rehearing en banc, nor for petition for writ of certiorari to the United States Supreme Court. As much, Terry avers that Chambers absence from Terry's cause, surrogated nonfeasance by Johnson, failed promise of sentence agreement, inter alia, were raisable on direct appeal.

16

**D. Aside The Actual Disbarment Which Occurred During His Representation of Terry, Chambers Performance History As Counsel Presents A Pattern Of Aggrieved Clients, Many For Similar Claims As Are Raised By Terry, As Well As Which Reflect The Misconduct For Which He Received His Disciplinary Sanctions**

In Plumaj v. Booker, 2014 U.S. Dist. Lexis 98489 (07/21/2014) Chambers gave Plumaj incorrect advice on when Plumaj would be eligible for parole, thereby contributing to an ineffective assistance of counsel ("IAC") claim by Plumaj. A second attorney for Plumaj filed an affidavit stating that, having consulted Chambers, Chambers admitted to having provided Plumaj with the incorrect advice concerning presumptive parole eligibility.

In United States v. Washington, 2013 U.S. Dist. Lexis 186664 (09/05/2013) Chambers allegedly failed to challenge the scoring attributed to Washington for purpose of calculating her Sentencing Guidelines Sentence Range. The IAC claim was denied at this stage of Washington's appeal proceedings.

Yet the State of Michigan Attorney Discipline Board (ADB), Tri-County Hearing Panel #16 found, by default, that Chambers neglected two legal matters; failed to seek the lawful objectives of clients; failed to act with reasonable diligence and promptness; failed to keep clients reasonably informed of the status of their matters; and failed to explain a matter to clients to the extent necessary to permit the clients to make informed decisions regarding their representation. Visit http://www.examiner.com/article/anthony-chambers-suspension-increased-to-disbarment; see Article, (hardcopy), in Appendice hereto, marked as Terry's §2255 Motion Exhibit "D".

17

E. **Chambers Forewent Conducting Rule 32 Procedure, As Indicated At Grounds "A", Supra, Likewise Omitting Adversarial Testing For Another "Other Prior Sentences"; A DISMISSED Case In The 36Th Judicial District Michigan State Court, Case Number**

Additionally, Chambers/Johnson, by the same ineffectiveness presented by this §2255 Motion as foregone, omitted making the Court aware of the fact that the 4/28/2008 Michigan State court case under case docket #08058842-01 was actually **dismissed** and as such was being improperly used as a "Other Prior Sentence" for purpose of Point Scoring affecting the Sentencing Guidelines Range. As much, Terry avers that this omission is yet another instance of the cumulative ineffectiveness shown here. See Register of Action pp. 1, 4-5 (Case officially reported as dismissed), enclosed herewith, marked Terry's Exhibit "E".

**WHEREFORE** Darren Terry does respectfully move the Court to vacate the judgment of sentence and Order that the misinformations of the presentence report be corrected, and Order that he be re-sentenced accordingly, without the errors caused by the ineffective assistance of counsel, without unreasonable sentence enhancements, and with consideration of the sentencing disparities of his sentence and his co-defendant's. For the rest we pray.

Dated: Glenville, West Virginia
        October 22, 2014

                                    Respectfully submitted,

                            /s/  _Darren Terry_
                                 Darren Terry,
                                 Movant, Pro Se

18

| STATE OF MICHIGAN<br>36TH JUDICIAL DISTRICT<br>ORI820365J | REGISTER OF ACTIONS | CASE NO:  **0805884201** D01 SM<br>X-REFERENCE #:   441107<br>STATUS: CLSD     02/27/09 |
|---|---|---|

JUDGE OF RECORD: ATKINS,MARYLIN E.,    P-31426
JUDGE: SHERMAN,MILLICENT D   P-55767

STATE OF MICHIGAN v

**TERRY/DARREN/DAVON**
16751 AVON
DETROIT        MI 48200

CTN: 0870845001
TCN:
SID:
ENTRY DATE: 04/09/08
**OFFENSE DATE:** 04/06/08

VEHICLE TYPE:                VPN:

DOB: 09/17/1966  SEX: M  RACE: B  DLN:        CDL:
VEH YR:      VEH MAKE:        VIN:          PAPER PLATE:

DEFENSE ATTORNEY ADDRESS
TAYLOR,RICHARD TERRELL,
PO BOX 430696
PONTIAC        MI 48343

BAR NO.
P-55237
Telephone No.
(586) 481-5981

OFFICER: DPD - CRIMS CONVERSION

DEPT: 0349999

PROSECUTOR: JARCZEWSKI,MICHELLE
VICTIM/DESC: TYLER/SHAWNTAE/

P-70831

**COUNT**  1 C/M/F: M 750411H            PACC#750.411H
**STALKING**
    **REDUCED FROM**
**COUNT**  1 C/M/F: F 750411I            PACC#750.411I
**STALKING - AGGRAVATED**
ARRAIGNMENT DATE:  04/21/08     PLEA:    PLEAD GUILTY   PLEA DATE: 07/30/08
FINDINGS:  DISMISSED     DISPOSITION DATE: 02/27/09
SENTENCING DATE:

| FINE | COST | ST.COST | CON | MISC. | REST | TOT FINE | TOT DUE |
|---|---|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

JAIL SENTENCE:              PROBATION:  6 MONTHS
VEH IMMOB START DATE:          NUMBER OF DAYS:       VEH FORFEITURE:

**BOND HISTORY:**

| RCPT DT | NO. | ACTION | TYPE | CHECK | AMOUNT | STAT | CLRK |
|---|---|---|---|---|---|---|---|
| 4/21/08 | 4060409 | 4/21/08 | 10% DEPOSIT | | 250.00 | CLSD | 792 |
| | | 5/30/08 | BND REFUNDED | 105085 | 250.00 | | 304 |

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | INITIALS |
|---|---|---|
| 04/06/08<br>  1  ORIGINAL CHARGE          STALKING<br>     OFF: DVTF          ,          , | | MIG<br>MIG |
| 04/09/08<br>     WARRANT ISS<br>     WARRANT RECOMMENDED<br>     JUDGE: PROSECUTOR<br>     REPORTER: * UNKNOWN REPORTER | | MIG<br>MIG<br>MIG<br>MIG |
| 04/10/08<br>     WARRANT     NO BOND SET<br>     SIGNED WARRANT<br>     JUDGE: SHERMAN,MILLICENT<br>     OTHER        :   ATTORNEY UNREPORTED | | MIG<br>MIG<br>MIG<br>MIG |

NAME:  TERRY/DARREN/DAVON                     CASE NO:  0805884201    PAGE    2

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | INITIALS |
|------|-------------------------------|----------|
| | REPORTER: UNREPORTED,          CERT#: 3001 | MIG |
| 04/21/08 | | |
| | ARR-WRNT     BOND SET | MIG |
| | DEFENDANT STANDS MUTE; PLEA OF NOT GUILTY E | MIG |
| | NTERED BY COURT | MIG |
| | JUDGE: BARTHWELL,SIDNEY,JR | MIG |
| | RETAINED COUNSEL  :   CARSON,STEPHANIE, | MIG |
| | REPORTER: CHARLESWORTH,PE    CERT#: 0314 | MIG |
| | BAIL WAS FIXED AT      $2,500.00 10% BOND | MIG |
| | NEXT SCHEDULED PROCEEDING: | MIG |
| |  EXAM | MIG |
| |    ON MAY      1, 2008   BEFORE JUDGE | MIG |
| | CARTER,RUTH | MIG |
| 05/01/08 | | |
| | EXAM      BOND CONTINUED | MIG |
| | PROCEEDING WAS ADJOURNED | MIG |
| | AT THE REQUEST OF THE COURT | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | RETAINED COUNSEL  :   CARSON,STEPHANIE, | MIG |
| | PROSECUTION      :   POWELL,TRISHA, | MIG |
| | REPORTER: MASSEY,BETTY,     CERT#: 0000 | MIG |
| | BAIL WAS FIXED AT      $0.00 | MIG |
| | NEXT SCHEDULED PROCEEDING: | MIG |
| |  EXAM | MIG |
| |    ON MAY     27, 2008   BEFORE JUDGE | MIG |
| | CARTER,RUTH | MIG |
| | FILING       FOR A CONTINUANCE | MIG |
| | SIGNED AND FILED | MIG |
| | BOND CONTINUED | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | RETAINED COUNSEL  :   CARSON,STEPHANIE, | MIG |
| | PROSECUTION      :   POWELL,TRISHA, | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| | FILING       FOR DISCOVERY | MIG |
| | FILED | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| 05/27/08 | | |
| | EXAM      BOND CONTINUED | MIG |
| | REDUCED TO MISDEMEANOR | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | RETAINED COUNSEL  :   TAYLOR,RICHARD, | MIG |
| | PROSECUTION      :   LOGAN,LADONNA, | MIG |
| | REPORTER: MASSEY,BETTY,     CERT#: 0000 | MIG |
| | BAIL WAS FIXED AT      $0.00 | MIG |
| | FILING       APPEARANCE BY A RETAINED ATTOR | MIG |
| | NEY | MIG |
| | FILED | MIG |
| | BOND CONTINUED | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | RETAINED COUNSEL  :   TAYLOR,RICHARD, | MIG |
| | PROSECUTION      :   LOGAN,LADONNA, | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |

NAME: TERRY/DARREN/DAVON                CASE NO: 0805884201     PAGE   3

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | INITIALS |
|---|---|---|
| | FILING        TO REDUCE CHARGE | MIG |
| | FILED | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| | FILING        TO LOWER BOND | MIG |
| | SIGNED AND FILED | MIG |
| | BOND SET | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | RETAINED COUNSEL  :    TAYLOR,RICHARD, | MIG |
| | PROSECUTION      :    LOGAN,LADONNA, | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| | BAIL WAS FIXED AT       $2,500.00 PERSONAL | MIG |
| | BOND (OWN RECOGNIZANCE) | MIG |
| | PRETRIAL      BOND SET | MIG |
| | PROCEEDING WAS ADJOURNED | MIG |
| | AT THE REQUEST OF THE COURT | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | RETAINED COUNSEL  :    TAYLOR,RICHARD, | MIG |
| | PROSECUTION      :    LOGAN,LADONNA, | MIG |
| | REPORTER: MASSEY,BETTY,     CERT#: 0000 | MIG |
| | BAIL WAS FIXED AT       $2,500.00 PERSONAL | MIG |
| | BOND (OWN RECOGNIZANCE) | MIG |
| | NEXT SCHEDULED PROCEEDING: | MIG |
| |  PRETRIAL | MIG |
| |   ON JUNE     20, 2008   BEFORE JUDGE | MIG |
| | CARTER,RUTH | MIG |
| 06/20/08 | | |
| | PRETRIAL      BOND CONTINUED | MIG |
| | PROCEEDING WAS ADJOURNED | MIG |
| | TO BE HEARD BY TRIAL JUDGE | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | RETAINED COUNSEL  :    TAYLOR,RICHARD, | MIG |
| | PROSECUTION      :    ANDERSON,TERRY | MIG |
| | REPORTER: BERTGES,SHARON,     CERT#: 0000 | MIG |
| | BAIL WAS FIXED AT       $0.00 | MIG |
| | NEXT SCHEDULED PROCEEDING: | MIG |
| |  JURY TRIAL | MIG |
| |   ON JULY      30, 2008   BEFORE JUDGE | MIG |
| | CARTER,RUTH | MIG |
| 07/30/08 | | |
| | FILING       COURT ACCEPTS PLEA OF GUILTY | MIG |
| | FILED | MIG |
| | BOND CONTINUED | MIG |
| | JUDGE: ATKINS,MARYLIN E | MIG |
| | RETAINED COUNSEL  :    TAYLOR,RICHARD, | MIG |
| | PROSECUTION      :    ANDERSON,TERRY | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| | FILING      REFER TO PROBATION FOR A REPOR | MIG |
| | T | MIG |
| | FILED | MIG |
| | JUDGE: ATKINS,MARYLIN E | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| | FILING       TO DELAY SENTENCING PER MCLA 7 | MIG |

NAME: TERRY/DARREN/DAVON                    CASE NO: 0805884201    PAGE   4

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | INITIALS |
|------|-------------------------------|----------|
| | 71.1 | MIG |
| | FILED | MIG |
| | JUDGE: ATKINS,MARYLIN E | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| | FILING        TO PAY COURT COSTS | MIG |
| | FILED | MIG |
| | JUDGE: ATKINS,MARYLIN E | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| | FILING        VICTIMS RIGHTS FEE | MIG |
| | FILED | MIG |
| | JUDGE: ATKINS,MARYLIN E | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| | SENTENCE        BOND CONTINUED | MIG |
| | SENTENCED | MIG |
| | JUDGE: ATKINS,MARYLIN E | MIG |
| | RETAINED COUNSEL  :    TAYLOR,RICHARD, | MIG |
| | PROSECUTION      :   ANDERSON,TERRY | MIG |
| | REPORTER: MASSEY,BETTY,      CERT#: 0000 | MIG |
| | BAIL WAS FIXED AT        $0.00 | MIG |
| | JURY TRIAL    BOND CONTINUED | MIG |
| | COURT ACCEPTED GUILTY PLEA | MIG |
| | JUDGE: CARTER,RUTH | MIG |
| | RETAINED COUNSEL  :    TAYLOR,RICHARD, | MIG |
| | PROSECUTION      :   ANDERSON,TERRY | MIG |
| | REPORTER: MASSEY,BETTY,      CERT#: 0000 | MIG |
| | BAIL WAS FIXED AT        $0.00 | MIG |
| | NEXT SCHEDULED PROCEEDING: | MIG |
| | REVIEW | MIG |
| | ON FEBRUARY  27, 2009    BEFORE JUDGE | MIG |
| | CARTER,RUTH | MIG |
| 02/27/09 | | |
| | FILING        TO DISMISS WITH PREJUDICE | MIG |
| | SIGNED AND FILED | MIG |
| | BOND CONTINUED | MIG |
| | JUDGE: ATKINS,MARYLIN E | MIG |
| | OTHER          :    TAYLOR,RICHARD, | MIG |
| | PROSECUTION    :   RUBIO,MARY, | MIG |
| | REPORTER: * UNKNOWN REPORTER | MIG |
| | ORIGINAL CHARGE: 750.411I     AGG STALKING | MIG |
| | DISMISSED | MIG |
| | CURRENT CHARGE:  750.411H     STALKING | MIG |
| | DISMISSED | MIG |
| | REVIEW        BOND CONTINUED | MIG |
| | CASE WAS DISMISSED | MIG |
| | AT THE REQUEST OF THE COURT | MIG |
| | JUDGE: ATKINS,MARYLIN E | MIG |
| | OTHER          :    TAYLOR,RICHARD, | MIG |
| | PROSECUTION    :   RUBIO,MARY, | MIG |
| | REPORTER: MASSEY,BETTY,      CERT#: 0000 | MIG |
| | ORIGINAL CHARGE: 750.411I     AGG STALKING | MIG |
| | DISMISSED | MIG |
| | CURRENT CHARGE:  750.411H     STALKING | MIG |
| | DISMISSED | MIG |

NAME: TERRY/DARREN/DAVON                CASE NO: 0805884201     PAGE   5

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | INITIALS |
|---|---|---|
| | BAIL WAS FIXED AT          $0.00 | MIG |
| | SENTENCED FOR VIOLATION OF STATUTE/ORDINANC | MIG |
| | E:750.411H | MIG |
| | STALKING | MIG |
| | ON JULY      30, 2008     BEFORE JUDGE | MIG |
| | ** UNKNOWN JUDGE | MIG |
| | PROBATION | MIG |
| | SENTENCED TO PROBATION FOR THE TERM: | MIG |
| | 6 MO | MIG |
| | 50CV,12W AM,AA,NC | MIG |
| | DEFENDANT TO PAY COURT COSTS OF | MIG |
| | $250.00 | MIG |
| 1 | DISMISSED | MIG |
| | CASE CLOSED | MIG |

A TRUE COPY
DEPUTY CLERK

***** END OF REGISTER OF ACTIONS ***** 03/12/14 07:46

# FEDERAL PUBLIC DEFENDER
## WESTERN DISTRICT OF MICHIGAN



50 Louis Street, NW, Ste. 300
Grand Rapids, Michigan 49503
Phone: 616.742.7420
Fax: 616.742.7430

P.O. Box 30
Negaunee, Michigan 49866
Phone: 906.226.3050

July 18, 2014

**SPECIAL MAIL – OPEN IN PRESENCE**
**OF ADDRESSEE ONLY**
Darren Terry
Register No. 15441-039
**FCI GILMER**
Post Office Box 6000
Glenville, WV 26351

Dear Mr. Terry:

I am writing in response to your recent letter. As I have mentioned in other letters I sent to you, you agreed to waive your appeal unless the sentence was greater than 327 months. Obviously, your sentence was several years less than that. I have read the plea and sentencing transcripts and can see no grounds to set aside the appeal waiver.

If you have problems with the representation you received in the district court, those issues should be raised in a motion filed under 28 U.S.C. § 2255 claiming that you received ineffective assistance of counsel. Those claims are rarely considered by the Court of Appeals on a direct appeal.

You have mentioned in several letters and on the telephone that you want to participate in the appeal process. The best way to do that would be to explain why you believe the appeal waiver does not apply. If you have any questions, please feel free to contact me.

Sincerely,

PAUL L. NELSON
Assistant Federal Public Defender

Ray Kent *Federal Public Defender* • Sharon A. Turek *First Assistant Defender* • David L. Kaczor *Senior Litigation Counsel*
Paul L. Nelson *Assistant Defender* • Paul A. Peterson *Assistant Defender*
Richard D. Stroba *Assistant Defender* • Sean R. Tilton *Assistant Defender*
Clare Freeman *Research & Writing Specialist* • Jasna Tosic *Research & Writing Specialist*

# FEDERAL PUBLIC DEFENDER
## WESTERN DISTRICT OF MICHIGAN



50 Louis Street, NW, Ste. 300
Grand Rapids, Michigan 49503
Phone: 616.742.7420
Fax: 616.742.7430

P.O. Box 30
Negaunee, Michigan 49866
Phone: 906.226.3050

July 9, 2014

**SPECIAL MAIL – OPEN IN PRESENCE
OF ADDRESSEE ONLY**
Darren Terry
Register No. 15441-039
**FCI GILMER**
**Federal Correctional Institution**
Post Office Box 6000
Glenville, WV 26351

Court of Appeals No. 13-2297

Dear Mr. Terry:

I am writing to follow up on my letter to you dated June 9, 2014, and also to respond to your letter dated June 29, 2014.

In my earlier letter I told you that one issue that I will have to address is whether this appeal is barred by the appeal waiver in your plea agreement. I now have been able to read the plea and sentencing transcripts. It appears that the PSR calculated the same sentencing range that you agreed to in the plea agreement. In the plea agreement, you agreed to waive your right to appeal the sentence if it was below the high end of the range agreed to in the plea agreement. The high end of that range was 327 months and your sentence was well below that. I am not sure that any grounds exist to get around the appeal waiver.

In exchange for your guilty plea, the government dismissed the other charge against you and the case pending in federal court in Ann Arbor. If you had been convicted of the other charge in this indictment and the charge in Ann Arbor, your sentence might have been longer than the 225 months you received.

Ray Kent *Federal Public Defender* • Sharon A. Turek *First Assistant Defender* • David L. Kaczor *Senior Litigation Counsel*
Paul L. Nelson *Assistant Defender* • Paul A. Peterson *Assistant Defender*
Richard D. Stroba *Assistant Defender* • Sean R. Tilton *Assistant Defender*
Clare Freeman *Research & Writing Specialist* • Jasna Tosic *Research & Writing Specialist*

Mr. Darren Terry, Reg. #15441-039                    **Federal Public Defenders**
July 9, 2014
Page 2

_____

The most important benefit you received in the plea agreement was the government's promise not to file the statutory notice of your prior controlled substance convictions. If the notice had been filed, and if you were convicted of this drug charge, you would have faced a mandatory sentence of life imprisonment with no possibility of parole. Instead, you were sentenced to 225 months.

I also read your letter about the errors you believe were made in calculating your criminal history points. Those errors had no impact on your guideline scoring. Although there may have been criminal history points applied that you think were applied in error, those errors only raised the criminal history category to IV. However, because of your prior drug convictions, you were classified as a career offender which automatically put you in criminal history category VI.

Even if those other points were not counted you still would have been in criminal history category VI as a career offender. You agreed to that calculation in the plea agreement and the worksheets attached to the plea agreement.

Also, those errors cannot be raised on this direct appeal. The Court of Appeals only works from the record in the district court and you did not object to those points at sentencing. It is not possible to present new evidence like the certified copies of the dismissal or the CCH Report to the Court of Appeals at this point. That information should have been given to the probation officer preparing the PSI or to the judge at sentencing.

Again, it appears that the appeal waiver prevents you from pursuing this appeal. If you have suggestions about how to get around the waiver please let me know as soon as possible. If you have any other questions or comments, please feel free to contact me at the Grand Rapids address listed above.

Sincerely,

PAUL L. NELSON
Assistant Federal Public Defender

D A R R E N   D.   T E R R Y
FBoP Reg. #15441-039
FCI Gilmer
P.O. Box 6000
Glenville, WV 26351

PAUL L. NELSON                           July 13, 2014
Attorney At Law
50 Louis Street NW                       Re: <u>United States v. Gordon,</u>
Grand Rapids, MI 49503                   <u>Et Al., (Darren Terry),</u>
                                         <u>Case No. 11-CR-20752</u>

Mr. Nelson:

        Sir, please be advised that I wish to provide you with the
best assistance that I am able to in the initiating of the
appellate process. Indeed, expect a number of future communications
that shall include correspondences and materials by which I will
be attempting to give you a clearer picture of what has gone on in
the lower court and what is envisaged as some viable claims about
these matters. First and foremost, please know that my current
review is a bit obstructed, made deficient by policy that denies
inmates personal possession of their Presentence Report ("PSR"), yet
I am attempting to conduct review of with my Corrections Counselor
and may you be able to send, at least, the segment of it which shows
everything that has been used to calculate the guideline range, that
would be much appreciated.

        With that said, sir, please be further advised that, for now,
I do believe that there are some important matters which require our
analysis. The first attorney, Mr. Chambers, had been disbarred for
nonfeasance in a separate client's case despite accepting huge sums
of compensations funds, etc. This matter was publicized in the media
and I am sure you shall have no problem ascertaining any details
about it, if you are not already privvy to the facts. In any event,
at that same time, I was also attempting to make sure that Mr.
Chambers was attentive to my own case and when I was able to help
him out with certain issues like procuring new tires for his vehicle,
and helping funding luncheons for which he was hopefully conducting
measures in the furtherance of my cause. Everything I and my family
attempted to do to accommodate Mr. Chambers was to no avail however
because he did nothing investigatory for the matter, not even seeking
discovery from the government, and yet the whole time kept promising
that he would procure a plea agreement which would stipulate the
government's seeking no more than a 120 month sentence. At some point
during Mr. Chambers' disbarment process his law office, Chambers &
Associates, sent a surrogate counsel to stand-in for Mr. Chambers
who was himself misrepresenting that he was only facing a 30-day
sanction of suspended license to practice law. This stand-in was Mr.
Johnson, who explained that Mr. Chambers was still lead counsel and
that he, Johnson, was only physically appearing for the lead.

Paul L. Nelson,                              Darren D. Terry
Attorney At Law                              Appellant

Re: USA v. Gordon, Et Al., (Darren Terry),
Case No. 11-CR-20752

July 13, 2014

Page 2 of 2

Mr. Johnson, of course, was not much more of an effective
assistance of stand-in counsel, basically only continuing to
relay message from Mr. Chambers who was incessantly advising me
"not to worry, because he ensuring the agreement with no more
than 120 months". At no time did Mr. Chambers, nor his "stand-in"
Mr. Johnson, availing of any of this case's "evidence" against
me so that we could examine and review it together. It remained
my reasonable expectation that the law office of Chambers &
Associates had in fact assured that my entry of a plea of guilty
here would result in no more than the incessantly promised 120
month sentence.

Aside from this matter, counsel should also take notice that
the plea agreement which Mr. Chambers advised and got me to sign
contained a stipulation of an agreed range of 120 to 240 months,
yet Chambers promised fully that the actual sentence would not
exceed the low-end of that range.

Lastly, regarding the ultimate sentencing process, I was
never able to review the PSR with Mr. Johnson nor Mr. Chambers.
However, Mr. Johnson advised me to follow his lead in court and to
simply answer yes or no to the Court as he directed. When I was
finally able to examine my PSR once I got here to FCI Gilmer, I
realized that these attorney's failed even to at least make due
objections to the use of a prior charge of aggravated stalking
which was dismissed; yet, the dismissed charge has added a point
to my Criminal History Category. The PSR also contained the error
of alleging that I was probationer at the time of the instant
offense, however, the probation that is subjected was imposed in
2008 and was for 1-year, and so obviously expired years before its
use here.

Please rejoin analysis of these particular matters concerning
this case, and as I say Mr. Nelson, please expect communications,
and material provisions from me in the near future. Thank you
kindly sir for your attention to these matters, and I look forward
to your reply, accordingly.

Respectfully submitted,


/s/_____
    Darren D. Terry,
    Appellant

# CERTIFICATE OF SERVICE

I, Darren Terry, Defendant-Petitioner, <u>Pro Se</u>, does hereby certify that a photocopied duplicate of the enclosed Motion to Vacate Judgment of Conviction Or Sentence Pursuant to 28 U.S.C. §2255 and Memorandum in Support, as well supporting papers in Appendice therewith, was made and placed in a prepaid postage parcel and given to prison authorities of the Federal Bureau of Prisons, Federal Corrections Institution Gilmer, Institutional Mailroom, Officer-of-the-Day for mailing via the U.S. Postal Service, First-Class Mail to counsel for respondent at:

UNITED STATES ATTORNEY'S OFFICE
EASTERN DISTRICT OF MICHIGAN
211 West Forst Street, Suite 2001
ATTN: AUSA STEVEN P. CARES
Detroit, MI 48226

This service was conducted on November //, 2014.

Certified Under Oath Or
Penalty of Perjury Pursuant
To 28 U.S.C. §1746

/s/ _Darren Terry_
Darren Terry,
Defendant-Petitioner
<u>Pro Se</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

## Case Docket No. 11-CR-20752

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent,<br><br>v.<br><br>**DARREN TERRY,**<br><br>Defendant-Movant. | **SWORN AFFIDAVIT OF DEFENDANT MOVANT DARREN TERRY**<br>IN SUPPORT OF RELIEF BY MOTION FOR ORDER TO VACATE JUDGMENTS OF CONVICTION AND OR SENTENCE<br>Pursuant to 28 U.S.C. §2255 |
| STATE OF WEST VIRGINIA )<br>                               )S.S.:<br>COUNTY OF GILMER          ) | (Submitted Therewith Motion For Filing, Aside Service) |

Defendant-Movant Darren Terry, as indicated in the above-captioned case of above-headed case docket number, being first duly sworn, deposes and says that:

1. I am Darren Terry, the defendant-movant as indicated above and am over the age of 18 years of age, and of sound mind makes this Sworn Affidavit of Defendant Movant Darren Terry in Support of Relief By Motion for Order to Vacate Judgments of Conviction and or Sentence pursuant to 28 U.S.C. §2255.

2. On or about April of 2011 I had been released on bond in relation to relative matters to the instant case; that matter having prosecuted also in this Court and having been presided over by U.S. District Judge Battani, I was contacted by CJA Court assigned attorney Anthony Chambers of Anthony T. Chambers Law Office, whom instructed me that because of his having been so assigned that we should meet and consult about the case.

3. The next day I went to Chambers' office at 615 Griswold Street in Detroit. He explained that the Government's case was based upon certain information being conveyed by a Nicole Chapman who was the girlfriend of John Cook, another man being implicated by Chapman's stories to the Government. Chambers shared my view that there was no tangible, material evidence in the case and that Chapman was likely a person who, having faced her own criminal charges of some sort, was decisively contriving a scheme of

SWORN AFFIDAVIT OF DEFENDANT DARREN TERRY
USA v. Terry, 11-CR-20752
Page 2 of 4

implications of assorted persons to trade for her own freedom.
Chambers concluded the consultation with an advisory to me that
he would be having a paralegal at his office inspecting the
"so-called" Government evidence, and an investigator who would
be looking into the case.

4. On or about another day in mid-April I began to call
Chambers at his office and on his cell phone to no avail. Such
attempts to contact Chambers went on for months until Chambers
finally returned call on or about February 19, 2013 to direct
me that my case which was pending before District Judge Battani
was being dismissed, and that we had to be part of a hearing
in the case pending before District Judge Cox because codefendant
Vincent Ervin was seeking a removal of counsel because Ervin did
not wish to have an attorney out of the same office of Chambers,
Ervin having been up to that point represented by Stephon E.
Johnson. We met at the Courthouse, appeared for said hearing and
the Court granted Ervin's application.

5. After the hearing, I walked back to Chambers' office with
him and we consulted all along the way, accompanied by my fiancee
who was privy to the details of the conversation. At this time,
Chambers explained to me that although he would be needing Johnson
to stand-in for him at court for my behalf because he would be
busy with a separate trial for awhile, but that I could be fully
assured that he would obtain a plea agreement which would expose
me to no longer that 120 months maximum.

6. Proceedings continued before District Judge Cox on 03/04/.;
03/12; and 03/25/ 2013, in which codefendants, including one of my
brothers, were all being required to appear for with their lawyers,
however, I, again, being unable to contact Chambers was without
any notice requiring my own presence but appeared nonetheless at
these court sessions for which other codefendants attorney's stepped
in and helped my representation before the Court.

2

SWORN AFFIDAVIT OF DEFENDANT DARREN TERRY
USA v. Terry, 11-CR-20752
Page 3 of 4

7. I continue to attempt to contact Chambers by calling his
law office as well as to his cell phone, again, to no avail. On
or about 03/23-27/2013 Chambers finally returned the calls and
asks me to meet him at the Coney Island on Finkle and Southfield
in Detroit, which I did about an hour and a half later. At this
meeting Chambers once again assured me that we were gearing to
enter into an agreement with the Government in which I would risk
no more than 120 months exposure, and that we were being required
to come into court and sign the agreement at a cut-off date of 04/
04/2013. I assured Chambers that I would be into court on the date.

8. On 04/04/2013 I appear in court and Chambers is not present
and so the Court delays the proceedings and I wait in the hallway
where my brother also waits with his attorney Lawrence Bunting. At
this time Bunting informs my brother and I that it seems that some
of our codefendants have entered into deals with the Government by
which they are plea guilty in turn for favor from the prosecution,
that is, as Bunting put it, "they have left us holding the bag".
Bunting's reaction to this event is an advisory to my brother that
Bunting would procure a plea agreement for my brother for 22 years.
As I and everyone else continues to wait, Chambers eventually
arrives and is likewise informed about the codefendants' implicating
my brother and I. Chambers reaction is to attempt to obstruct
Bunting from his intent, advising him to "ride his coattail" while
he, Chambers, attended to matters. By the time Chambers called us
into court I sat in the pew waiting and after awhile he came and
sat next to me holding some papers that he indicated was the plea
agreement that he procured. It was the first time it ever availed
to my sight, however, I was not provided any opportunity to examine
it. Approximately 4 minutes later we were summoned before the court.

9. Before the Court, indicated to the Court that I would be
entering into a plea agreement with the Government. At this time
Chambers opens the papers for the very first time that I ever saw
and directs me to sign my name at prompted places for signature.

3

SWORN AFFIDAVIT OF DEFENDANT DARREN TERRY
USA v. Terry, 11-CR-20752
Page 4 of 4

10. The Court indicated that deliberation would conduct for whether it would accept the agreement and we left court. We all parted ways and Chambers indicated that he would call me in time.

11. On or about June to July 2013 Chambers indeed calls me and directs to meet him at Baker's Lounge on Livernois and 8 Mile in Detroit and to "bring lunch money". I complied. My fiancee and I await Chambers who upon arrival asks me to come with him to another part of the lounge where he directs me that he will not be making it to the sentencing court date but that Johnson will be assuring my continued representation. About this time Chambers' date arrived and I handed him $100 which he took and we parted.

12. At or around August 10, 2013 there was a shooting and I was left critically wounded. During my time in the hospital some-one from Chambers' office contacted my fiancee and inquired as to my status, directing for me to contact the office when possible. After about 2-3 weeks I left the hospital and met with Chambers who directed me to have any investigator contact him. This was the last time I ever saw Chambers, however.

13. On 09/18/2013, and a number of postponements, sentencing was held and Johnson, conducting his stand-in for Chambers simply directs me to "follow my lead, and you'll know when to say yes or no." At no time did Johnson avail the presentence report nor plea agreement and we merely proceeded to receive the sentencing of the Court. Curiously, Johnson stands approximately $3\frac{1}{2}$-4 ft. away from me as the Court renders the 225 month sentence. I did not have an opportunity to even protest as the Court attempted to stop the U.S. marshals from arresting me then and there without sentencing even being completed. With the marshals chastened, the Court provides me with my appeal right advisories and I am taken away. I never saw the PSR or Plea Agreement until arrived here at Gilmer.

**SWORN TO AND SUBSCRIBED BEFORE ME**
**THIS** 5th **DAY OF NOVEMBER 2014**

Deposed by:

/s/ _Darren Terry_

_____
**N O T A R Y       P U B L I C**

Darren Terry



NOTARY PUBLIC OFFICIAL SEAL
KELLI WILSON
State of West Virginia
Federal Bureau of Prisons-FCI Gilmer
My Commission Expires
July 24, 20_6
P.O. Box 5000
Glenville, WV 26351

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

Case Docket No. **11-CR-20752**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff-Respondent,<br><br>     v.<br><br>**DARREN TERRY,**<br><br>     Defendant-Movant.<br>_____/ | **SWORN AFFIDAVIT OF WITNESS CARLETTA HUFFMAN**<br>IN SUPPORT OF RELIEF BY MOTION FOR ORDER TO VACATE JUDGMENTS OF CONVICTION AND OR SENTENCE<br>Pursuant to 28 U.S.C. §2255 |

| | | |
|---|---|---|
| STATE OF MICHIGAN | )<br>)S.S.: | (Submitted Therewith Motion For Filing, Aside Service) |
| COUNTY OF WAYNE | ) | |

Witness Carletta Huffman, associated with the Defendant-Movant and having been engaged to marry since before the factual events of subject below, being first duly sworn, deposes and says that:

1. I am Carletta Huffman, a witness as indicated above and am over the age of 18 years of age, and of sound mind makes this Sworn Affidavit of Witness Carletta Huffman in Support of Relief By Motion for Order to Vacate Judgments of Conviction and or Sentence pursuant to 28 U.S.C. §2255.

2. On or about 02/19/2013, I had just left the courthouse at West Lafayette in Detroit with my fiancee Darren Terry and his attorney Anthony Chambers. We were walking back to where the car was parked which was near Chambers' law office, and Darren and Chambers were talking about the case. At that time I overhear Chambers explaining to Darren that in the event they entered into a plea agreement with the Government that he, Chambers, was assuring Darren that he would have it stipulated in the agreement that Darren would not be exposed to more than 120 months maximum term of imprisonment. Darren told Chambers that only under those circumstances would he be willing to consider the agreement.

3. On or about 03/4/, 03/12, and 03/25/2013, I appeared in court for with Darren and for his behalf, and was there with Darren's brother Derrick, Orlando Gordon, Darnell Eastland, Tamiko

SWORN AFFIDAVIT OF WITNESS CARLETTA HUFFMAN
USA v. Terry, 11-CR-20752
Page 2 of 3

Hodo, Vince Shivers, Erik Ross, Benjamin Carter, and attorneys
Mr. Hatchett, Mr. Lawrence Bunting, and at least also Lisa Dwyer,
as well as AUSA Stephen Cares, all of us before His Honorable Sean
F. Cox. Absent from each and every of these proceedings was Mr.
Chambers. Different lawyers who worked for other codefendants
stood-in for Chambers and helped Darren in court on these court
dates. These attorneys make motions for behalf of their own
clients, however, were not able to for Darren.

4. On or about 07/10/2013, Darren got a telephone call from
Chambers who had told Darren to meet him at Baker's Lounge on
Livernois and 8 Mile in Detroit and to bring lunch money. We go
to meet Chambers and waited there for around 20 minutes until he
showed up. At that time he waved for Darren to come join him at
another part of the lounge, where they consulted for about 15
minutes at most. At this point a lady came into the lounge and
joined them, Darren extended some cash to Chambers who took money
from Darren's hand, and Darren parted from the couple a couple of
moments later. Darren rejoined me, and we left Baker's Lounge.

5. On or about 08/10/2013, I was at the hospital with Darren
who had been injured in a shooting. Darren asked me give Chambers
a call and let him know what had happened. Chambers tells me to
have Darren meet him whenever he gets out of the hospital. A few
weeks later he called me back and Darren took the call. Chambers
then came to our home and consulted with Darren. Where Chambers
had apparently advised Darren that if investigators about the
shooting that had taken place return to try to question him to
have them contact him, Chambers, Darren gave me Chambers' card
and asked me to give it to any investigator who might come by.

6. On 09/18/2013, I appeared in court for Darren's sentencing
date. He was represented by Stephon Johnson standing in for the
once again absent Chambers. I was seated on the opposite side of
the courtroom from Darren and Johnson stood, about 3 rows back

2

SWORN AFFIDAVIT OF WITNESS CARLETTA HUFFMAN
USA v. Terry, 11-CR-20752
Page 3 of 3

from where they stood before the Judge. Johnson stood off away
from Darren as the sentence was rendered. Darren received 225
months; quite beyond the 120 month maximum that Chambers and
Johnson had assured Darren was the most that he would receive
for having entered into the plea agreement with the Government.
Darren appeared about to protest and tell the judge about what
had happened, when U.S. marshals began to arrest him there in the
courtroom. I know he was still recovering from his wound and
surgery and he appeared in pain as the marshals grabbed hold of
him. The Judge asked the marshals to lessen their restraint and
assured Darren of his ability to seek review of the disposition
of the case by filing a notice of appeal. I, as well as everyone
who was there for Darren were directed that we must stay seated
while the marshals took Darren away.

7. Once I was in contact with Darren again, he expressed
that he was as much in shock about the outcome of the sentencing
as all of us were, and that he was as betrayed by Chambers and
Johnson as he was by those who fabricated stories to scapegoat
him to some characterization in these matters which he was not.
He expressed his desire to let the Court know what had really
happened and to explain that if he knew he was pleaing to get
this much time that he would have simply taken his chances trying
to uncover the truth at trial. Darren has also told me that now
since he has been incarcerated at FCI Gilmer he has finally seen
his plea agreement and presentence report, both which he had
never been given a chance to review at any time before.

SWORN TO AND SUBSCRIBED BEFORE ME           Deposed by:
THIS  6  DAY OF NOVEMBER 2014

/s/ _Carletta Huffman_

N O T A R Y         P U B L I C

ANDRE BARTELL
Notary Public - Michigan
Wayne County
My Commission Expires Dec. 10th 2019
Acting in the County of Wayne

*Wikimedia Commons*

The **State of Michigan Attorney Discipline Board** (ADB) has increased to disbarment the 180-day suspension received by Detroit attorney Anthony T. Chambers, the ADB reported recently. The disbarment is effective retroactive to April 22, 2013.

ADB Tri-County Hearing Panel #16 found, by default, that Chambers neglected two legal matters; failed to seek the lawful objectives of clients; failed to act with reasonable diligence and promptness; failed to keep clients reasonably informed of the status of their matters; and failed to explain a matter to clients to the extent necessary to permit the clients to make informed decisions regarding their representation.

The panel further found that Chambers failed to properly pay or deliver any funds that clients were entitled to; failed to hold property of clients or third persons in connection with a representation separate from his own property; failed to deposit client funds into an IOLTA or non-IOLTA account separate from his own property; failed to deposit legal fees paid in advance into a client trust account; and failed to refund, upon termination of the representation, any advance payment of fee that had not been earned.

Chambers also knowingly failed to respond to a lawful demand for information from a disciplinary authority and failed to file an answer to the formal complaint.

The panel ordered that Chambers be suspended from the practice of law in Michigan for 180 days, effective April 22, 2013, subject to a condition relevant to the established misconduct, and pay costs of $3,312.92.

The Grievance Administrator petitioned the ADB for review of the hearing panel's order on the grounds that the panel erred by imposing discipline less than disbarment and by failing to order restitution. The ADB conducted review proceedings on July 10, 2013.

On Oct. 24, 2013, the ADB entered an order and opinion increasing discipline from a 180-day suspension to disbarment, and directing Chambers to pay restitution in the amount of $37,500. The ADB also directed Chambers to pay additional costs of $135.13.

SUGGESTED LINKS