UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                                    Case No. 11-20752

Darren Terry,                                                Sean F. Cox
                                                                            United States District Court Judge

    Defendant.
_____/

**OPINION AND ORDER GRANTING MOTION TO AMEND (ECF No. 711) AND DENYING MOTIONS TO REDUCE SENTENCE (ECF No. 709 and 718)**

In 2013, Defendant Darren Terry pleaded guilty to one count of conspiracy to distribute controlled substances. The Court imposed a 225-month sentence. Terry now moves for compassionate release, arguing that he is at risk of developing life-threatening symptoms if he contracts the novel coronavirus ("COVID-19") because he suffers from "borderline diabetes," hypertension, and glaucoma and because he has purportedly been diagnosed with colon cancer. The Government opposes Terry's release. Terry has also moved to amend his compassionate release motion to include citations to additional authorities.

Because the Court concludes that oral argument will not aid the decisional process, the Court will decide the motions on the parties' briefing. E.D. Mich. LCrR 12.1(a); LR 7.1(f)(2). For the reasons below, the Court will grant Terry's motion to amend and deny Terry's motions for compassionate release.

1

## BACKGROUND

On April 2, 2013, Terry pleaded guilty to one count of conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) and § 846. (ECF No. 379). At sentencing, Terry's Guidelines Range was 216 to 240 months' imprisonment. On September 18, 2013, the Court sentenced Terry to 225 months' imprisonment. (ECF No. 452). Terry appealed and the United States Court of Appeals for the Sixth Circuit affirmed Terry's conviction in an unpublished opinion. *United States v. Terry*, 613 Fed.App'x 540 (6th Cir. 2015). Terry filed a habeas petition under 28 U.S.C. § 2255, which the Court denied. (ECF No. 657). Terry did not attempt to appeal the Court's decision on his § 2255 petition. According to the Bureau of Prisons's website, Terry is expected to be released on October 4, 2029.

Since Terry's conviction became final, he has made three attempts to reduce his sentence. In 2018, he sought a reduction because he believed that his Guidelines Range had been lowered after his conviction. (ECF No. 670). The Court denied this motion because Terry was sentenced as a career offender and, therefore, his Range did not actually change. (ECF No. 676). In 2019, he sought a reduction under *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), arguing that one of his prior convictions no longer counted towards his career offender status. (ECF No. 691). The Court construed this motion as a second or successive § 2255 petition and transferred it to the Sixth Circuit. (ECF No. 705). The Sixth Circuit later dismissed Terry's motion for want of prosecution. (ECF No. 707).

On April 30, 2020, Terry signed and mailed his pending motion for compassionate release. (ECF No. 711). The filing and briefing of this motion was complicated by the sudden closure of the Theodore Levin United States Courthouse and the resulting disruption in the ability of the

2

Clerk's Office to process prisoner mail. Thus, Terry's motion was not entered on the Court's docket until June 23, 2020. In his motion, Terry argues that the 18 USC § 3553(a) factors favor a sentence of time served and alleges that his hypertension and "borderline diabetes" put him at risk of life-threatening symptoms if he contracts COVID-19. On June 26, 2020, the Court ordered the Government to respond to Terry's motion. (ECF No. 710).

On July 2, 2020, the Court received and docketed a motion to amend from Terry. (EC No. 709). [1] In this motion, Terry directs the Court to several decisions from within this district where defendants have been granted compassionate release. Terry also alleges that "he was advised recently that test results have come back confirming his diagnosis of colon cancer," and adds glaucoma to his list of medical conditions that, he believes, places him at a high risk of complications from COVID-19.[2]

On July 14, 2020, the Court received and docketed a second motion for compassionate release from Terry. (ECF No. 718). This motion appears to be primarily the result of the mail delays; in it, Terry states that "my family was told that there was no motion found on the docket file for me, so another motion was drafted now, with new information, such as my recidivism level of LOW, which would make me qualified for relief." (ECF No. 718). This motion largely mirrors Terry's previous filings. He argues that the § 3553(a) factors favor release and that he could develop life-threatening symptoms if he contracts COVID-19 because of his hypertension, glaucoma, borderline diabetes, and alleged colon cancer diagnosis.

---

[1] Terry signed and mailed this motion on June 11, 2020. However, due to the mail disruptions caused by the closure of the Courthouse, the motion was not docketed until July 2, 2020.

[2] The Government does not appear to oppose Terry's motion to amend so the Court will grant that motion and considers it as part of Terry's motion for compassionate release.

On July 7, 2020, the Government filed a response, opposing Terry's release. (ECF No. 712). The Government argues that Terry's medical conditions do not constitute "extraordinary and compelling reasons" for release, that Terry's release would endanger the community, and that the § 3553(a) factors do not favor release.

On July 31, 2020, the Court received and docketed a reply from Terry. (ECF No. 727). Terry reiterates his medical conditions, disputes the Government's contention that he is a danger to the community, and alleges that the BOP is unable or unwilling to provide the medical care necessary to properly address his colon cancer or the COVID-19 pandemic. And he describes the family and economic resources available to him upon release.

## ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A), the Court may reduce an imposed sentence if it determines that "extraordinary and compelling reasons warrant such a reduction." In addition to this finding, the Court must also consider the sentencing factors described in 18 U.S.C. § 3553(a) and decide if a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement" with which the Court must comply when considering Terry's request for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." The category of "Other Reasons" requires the

4

BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances under this fourth category. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019).

"In all, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B.13 of the Sentencing Guidelines." *United States v. Shah*, 2020 WL 1934930 at *1 (E.D. Mich. April 22, 2020) (citations omitted).

**I.      Extraordinary and Compelling Reasons / U.S.S.G. § 1B1.13**

The First Step Act effectively transferred the power to determine whether "extraordinary and compelling reasons" exist from the BOP to the federal courts. *See, generally, United States v. Young*, 2020 WL 1047815 at *3-6 (M.D. Tenn. March 4, 2020) (describing changes in the statutory and regulatory standards that governed compassionate release motions from 1984 to the present). Before the First Step Act, the BOP made that call by applying a standard articulated by the United States Sentencing Commission in an Application Note to U.S.S.G. § 1B1.13. *Id*.    Today, that finding is not predicated on either that Application Note or the BOP's judgment because the First Step Act gave the judiciary "the authority to reduce a prisoner's sentence upon the [C]ourt's independent finding of extraordinary or compelling reasons." *Id*. at *6 (collecting cases). To make

5

this finding, however, the Court may still look to § 1B1.13's Application Note for guidance in applying this "vague standard." *United States v. Ebbers*, -- F.Supp.3d --, 2020 WL 91399 at *2 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019).[3]

To begin, § 1B1.13's Application Note provides certain circumstances in which a prisoner's medical condition constitutes an extraordinary and compelling reason for a sentence reduction:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> **(ii)** The defendant is
>
> **(I)** suffering from a serious physical or medical condition,
>
> **(II)** suffering from a serious functional or cognitive impairment, or
>
> **(III)** experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[3] Whether the Application Note to § 1B1.13 restricts the Court's analysis of "extraordinary and compelling reasons" or is merely guidance is not dispositive of this motion, or likely of any other similar motion. Even if § 1B1.13 is only guidance, the defendant's release must still be consistent with that section under 18 U.S.C. § 3582(c)(1)(A) (requiring a sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission.")

U.S.S.G. § 1B1.13, comment. (n.1) (2018).

Even considered together, the medical conditions described by Terry do not meet either circumstance outlined in § 1B1.13's Application Note. To begin, the Court is not aware of any medical authority that links glaucoma to severe COVID-19 symptoms. Notably, the Centers for Disease Control and Prevention ("CDC") do not list glaucoma as an underlying condition that places or might place people at a heightened risk from COVID-19. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 6, 2020).

Diabetes and colon cancer would increase Terry's risk of developing severe symptoms, but the record does not support the conclusion that Terry has either of these conditions. What Terry characterizes as "borderline diabetes" appears to be, at worst, "pre-diabetes." (ECF No. 715, PageID 3861) (Terry's Sealed Medical Records) (describing three clinical observations of "pre-diabetes" in 2016). Pre-diabetes is not diabetes. *See United States v. Hazam*, 2020 WL 3265349 at *2 (C.D. Ill. June 17, 2020) ("While the CDC recognizes diabetes as a comorbidity that may increase the risk of serious injury or death from COVID-19, the same is not true of prediabetes.") And Terry's medical records make no mention of him being diagnosed with colon cancer; the only mentions of cancer occurred when Terry informed his doctor of his family history of colon cancer on June 3, 2020. (ECF No. 715-2, PageID 3901 and 3904) (Terry's Sealed Medical Records). Thus, at this time, Terry has not sufficiently substantiated that he actually suffers from diabetes or colon cancer.

That leaves Terry's hypertension, which is a condition that the CDC recognizes "may increase [his] risk of severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. However, Terry's medical records consistently indicate that his hypertension is well-controlled by his medication. (ECF No. 715-1, PageID 3834 and 3859; ECF No. 715-2, PageID 3916). And there is no indication that Terry's hypertension can be considered a "terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or that it can be considered a "serious physical or medical condition" that "substantially diminishes [his ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."

Even outside the guidance provided by the Application Note, the current circumstances do not provide extraordinary and compelling reasons to reduce Terry's sentence. A court in this district has defined "extraordinary" as "exceptional to a very marked extent," and "compelling" as "tending to convince or convert by or as if by forcefulness of evidence." *Shah*, 2020 WL 1934930 at *2 (E.D. Mich. April 22, 2020) (quoting Webster's Third International Dictionary, Unabridged (2020)). Another court in this district has described the requirements of "'extraordinary' as beyond what is usual, customary, regular, or common," and "'compelling reason' as one so great that irreprovable harm or injustice would result if the relief is not granted." *United States v. Sapp*, 2020 WL 515935 at *3 (E.D. Mich. Jan. 31, 2020) (citations omitted).

Terry's fear of COVID-19 is understandable. But the BOP reports that there are currently no cases of COVID-19 at Terry's facility, FCI Ashland. And the BOP has instituted comprehensive measures to prevent or mitigate the spread of COVID within its facilities. Moreover, Terry's fear is also speculative. Even if his medical conditions place him at "an elevated risk of developing

8

the more severe symptoms of COVID-19, [] that generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release. . . ." *United States v. Peaks*, 2020 WL 2214231 at *2 (E.D. Mich. May 7, 2020); *see also Shah*, 2020 WL 1934930 at *2 ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . whether Defendant will contract COVID-19, and whether he will develop serious complications does not justify the extreme remedy of compassionate release.")

## CONCLUSION

For these reasons, the Court **GRANTS** Terry's motion to amend (ECF No. 711) and **DENIES** Terry's motions for compassionate release. (ECF Nos. 709 and 718). The Court concludes that, at this time, Terry has not presented extraordinary and compelling reasons that justify a compassionate release and that Terry's release would not be consistent with the applicable policy statements issued by the Sentencing Commission.[4]

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: August 10, 2020

---

[4] Because of the Court's conclusions on these issues, it need not resolve the additional arguments regarding dangerousness or the § 3553(a) factors.